**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**

CELIA WILLIAMS, individually and on behalf of all others similarly situated,

*Plaintiff,*

vs.

USHEALTH ADVISORS, LLC and THE MONTAGUE AGENCY, LLC,

*Defendant.*

_______________________________________/

**CLASS ACTION**

**Case No.** CV424-267

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

1. Plaintiff, CELIA WILLIAMS ("Plaintiff"), brings this action against Defendants, USHEALTH ADVISORS, LLC and The Montague Agency, LLC (collectively "Defendants"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3. Defendant USHEALTH Advisors, LLC ("USHEALTH") is one of the largest health insurance sales companies in the United States.

4. Defendant The Montague Agency, LLC ("Montague") is a subsidiary branch/region of USHEALTH and a health insurance sales agency whose agents/brokers aggressively market and sell health insurance policies on behalf of The Montague Agency, LLC and USHEALTH Advisors, LLC.

5. To promote their services and products, Defendants engage in aggressive unsolicited marketing, harming thousands of consumers in the process. Defendants utilize aggressive marketing to

push its products without regards to consumers' rights under the TCPA and the National Do Not Call Registry.

6. Defendant USHEALTH placed telemarketing calls through its agent(s) including but not limited to Montague, to Plaintiff and the putative class members' residential telephone numbers in violation of the TCPA and its corresponding regulations.

7. USHEALTH and Montague provide ongoing training and support to their agents and brokers on how to generate business in health insurance sales, including through cold calling and texting consumers.

8. Through this action, Plaintiff seeks injunctive relief to halt Defendants' illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

9. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute.

10. Venue is proper in the United States District Court for the Southern District Of Georgia pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in this District, Defendants conduct business within this district, because Defendants are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendants provide and market its services into this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendants' tortious conduct against Plaintiff occurred within the State of Georgia and, on information and belief, Defendants have sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendants' acts in making such calls have occurred within this district, subjecting Defendants to jurisdiction in the State of Georgia.

## PARTIES

11. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Chatham County, Georgia.

12. Defendant USHEALTH is a domestic profit corporation with its principal address located at 300 Burnett Street, Suite 200, Fort Worth, Texas 76102. USHEALTH directs, markets, and provides its business activities throughout United States and the State of Georgia.

13. Defendant Montague is a Tennessee limited liability company whose principal office is located at 20 BEECHWOOD COURT, MT JULIET, TN 37122 USA. Montague directs, markets, and provides its business activities throughout United States and the State of Georgia.

14. As relevant to this Complaint, a group of agents from Montague hold themselves out as agents that sell health insurance for USHEALTH's benefit.

15. Defendant USHEALTH controls and has the right to control all forms of advertising using its name, as used by its agent Montague. These forms of advertising include the telemarketing at issue in this case.

16. Defendant Montague has the right to control all forms of advertising and solicitations as used by their health insurance agents.

## FACTS

17. Defendants provide training to their agents through their training platform, including specific training on how to market their services.[1]

18. Many of Defendants' agents engage in calling or texting consumers in an attempt to win their business.

---

[1] https://www.montagueagency.com/usha-university

19. To increase its number of potential customers by soliciting to new consumers, Defendants purchase consumer lead information from HealthPlanRate.com, a company privately owned by Excel Impact, LLC - and self-described "customer acquisition" company.[2]

20. Defendants purchased Plaintiff's lead information, including her residential cellular telephone number, from HealthPlanRate.com after Plaintiff visited HealthPlanRate.com's website on or about May 24, 2024.

21. At the time of her visit to the HealthPlanRate.com website, Plaintiff did not provide her express written consent to Defendants to receive Defendants' telemarketing text messages on her residential cellular telephone from Defendant's health insurance agents.

22. Plaintiff never provided any signed agreement, or any other agreement, between herself (the consumer) and Defendants (the seller) consenting to telemarketing from Defendant.

23. Defendants did not provide any clear and conspicuous disclosure that it would be sending telemarketing text messages to Plaintiff from Defendants.

24. On November 10, 2022, the FCC issued an Order that the TCPA's clear and conspicuous disclosure requirements are not satisfied by disclosing numerous companies in a hyperlink:

> The websites included TCPA consent disclosures whereby the consumer agreed to receive robocalls from "marketing partners." These "marketing partners" would only be visible to the consumer if the consumer clicked on a specific hyperlink to a second website that contained the names of each of 5,329 entities. We find that listing more than 5,000 "marketing partners" on a secondary website is not sufficient to demonstrate that the called parties consented to the calls from any one of these "marketing partners."

docs.fcc.gov/public/attachments/DA-22-1271A1.pdf; (last accessed October 29, 2024); *see also Trim v. Mayvenn, Inc.*, 2022 U.S. Dist. LEXIS 63222, at *n.6 (N.D. Cal. Apr. 5, 2022) (noting in dicta that where supposed consent language was "contained in a general privacy policy on a separate page of [a] website" it was not "clear and conspicuous as a matter of law").

---

[2] https://excelimpact.com/ (last accessed November 22, 2024).

25. To solicit new customers (and generate revenue), Defendants send telemarketing text messages to the consumer leads it purchases from healthplanrate.com, including Plaintiff.

26. Defendants' health insurance agents will call consumers who are registered on the DNC and who have not given Defendants nor any of their agents consent to call them on their phone number.

27. Defendants receive a commission directly from the successful transaction of each of its agents, up to a certain cap amount, including those that generate their business by violating the TCPA.

28. Beginning in or around May of 2024, Defendants began bombarding Plaintiff with telemarketing text messages to Plaintiff's cellular telephone number ending in 5441 (the "5441 Number") including but not limited to the following texts below:






29. These text messages identify that they are from "The Montague Agency" and are marketing health insurance plans from several insurance providers.

30. Defendants' text messages continued through June, July and August of 2024 and likely beyond, as shown below:












31. Defendants' text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

32. Defendants' text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., promoting health insurance policies and products.

33. Defendants derive profit from and exercise control over their health insurance agents. Defendants' agents have actual and/or apparent or implied authority to act on behalf of Defendants.

34. The information contained in the text message advertises Defendants' various discounts and promotions, which Defendants send to promote their business.

35. Defendants sent the subject texts into this judicial district and, therefore, Defendants' violation of the TCPA occurred within this district. Upon information and belief, Defendants caused other text messages to be sent to individuals residing within this judicial district.

36. At no point in time did Plaintiff provide either Defendant with her express written consent to be contacted.

37. Plaintiff has no existing business relationship with Defendants.

38. Plaintiff is the subscriber and sole user of the 5441 Number and is financially responsible for phone service to the 5441 Number.

39. Plaintiff's 5441 Number is her residential telephone number used for personal purposes and is her primary way of being contacted from her home.

40. Plaintiff's 5441 Number has been registered with the national do-not-call registry since February 14, 2019, and at all times relevant to this action.

41. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

42. The text messages originated from telephone number 229-414-5164, a number which upon information and belief is owned and operated by Defendants or on behalf of Defendants.

43. On information and belief, Defendant USHEALTH sought a benefit from the telemarketing text messages it placed through Defendant Montague to Plaintiff and the putative class members, as both entities attempted to drum up business from these messages.

44. On information and belief Defendant USHEALTH knew or had reason to know that its agents, including Montague placed the telemarketing text messages at issue.

45. On information and belief, USHEALTH contracted with Montague to market its products, including the products that were tele-marketed to Plaintiff without her consent.

46. Defendant USHEALTH derives profit from and exercises control over Defendant Montague and its agents.

47. Accordingly, Montague had actual and/or apparent/implied authority to act on behalf of USHEALTH.

48. Defendant Montague derives profit from and exercises control over its health insurance agents including but not limited to the agents who contacted Plaintiff.

49. Accordingly, the sales agents of Montague had actual and/or apparent/implied authority to act on behalf of Montague.

50. Defendants' unsolicited text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants' text messages also inconvenienced Plaintiff and caused disruption to her daily life.

51. Plaintiff estimates that she has wasted fifteen to thirty seconds reviewing each of Defendants' unwanted messages. Each time, Plaintiff had to stop what she was doing to either retrieve her phone and/or look down at the phone to review the message.

## CLASS ALLEGATIONS

### PROPOSED CLASS

52. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

53. Plaintiff brings this case on behalf of a Class defined as follows:

> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of promoting Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**

54. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

55. Plaintiff reserves the right to alter the Class definition as she deems necessary at any time to the full extent that the Federal Rules of Civil Procedure and applicable case precedent allow.

NUMEROSITY

56. Upon information and belief, Defendants have placed violative calls to cellular telephone numbers belonging to thousands of consumers throughout the United States who are registered on the Do Not Call registry. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

57. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

COMMON QUESTIONS OF LAW AND FACT

58. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

a) Whether Defendants violated 47 C.F.R. § 64.1200(c);

b) Whether Defendants' conduct was knowing and willful;

c) Whether Defendants violated the privacy rights of Plaintiff and members of the class;

d) Whether Defendants are liable for damages, and the amount of such damages; and

e) Whether Defendants should be enjoined from such conduct in the future.

59. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmit text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

60. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

61. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

62. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class

resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

63. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violation of the TCPA 47 U.S.C. § 227**
**(On Behalf of the Plaintiff and the Do Not Call Registry Class)**

64. Plaintiff repeats and re-alleges paragraphs 1 through 63 of this Complaint and incorporates them by reference herein.

65. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

66. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[3]

67. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

68. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

69. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

70. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

71. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of monetary damages for Plaintiff and each member of the Class;

c) An order declaring that Defendant's actions, set out above, violate the TCPA;

d) An injunction requiring Defendants to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Class;

e) Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff and Class Members hereby demand a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendants take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the allegations herein, including all records, lists, electronic databases or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendants to assist in sending the alleged communications.

Dated: November 25, 2024

**Shamis & Gentile, P.A.**
/s/ Andrew J. Shamis
Andrew J. Shamis, Esq.
Georgia Bar No. 49496
ashamis@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

*Counsel for Plaintiff and the Class*